# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 11, 2010

No. 09-30837

Lyle W. Cayce
Clerk

In re: SYLVESTER ROLLINS,

Movant.

On Motion for Permission to File
a Successive Petition for a Writ of Habeas Corpus
in the United States District Court
for the Eastern District of Louisiana

Before WIENER, PRADO, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

*Pro se* petitioner Sylvester Rollins, sentenced to life in prison for the second-degree murder of Leslie Morris, seeks authorization to file a successive habeas petition under 28 U.S.C. § 2244(b)(2)(B) due to newly-discovered evidence. The newly-discovered evidence consists of the testimony of Jane Marie Lewis and Percy Gray, two eyewitnesses who testified that Rollins shot and killed Morris in self-defense after Morris drew a gun. Rollins has made "a sufficient showing of possible merit to warrant a fuller exploration," *In re Morris*, 328 F.3d 739, 740 (5th Cir. 2003) (quotation omitted), as to whether he could not have previously discovered this evidence through the exercise of due diligence,

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-30837

and as to whether Lewis and Gray's testimony would establish by clear and convincing evidence that no reasonable trier of fact could have found Rollins guilty of second-degree murder. Accordingly, we find that Rollins has made a *prima facie* showing, and we GRANT his request to file a successive habeas petition.

## I. BACKGROUND[1]

In 1973, Rollins was driving in New Orleans when he almost had an automobile accident with Morris. Immediately after the near-accident, Rollins and Morris moved their vehicles to the side of the road and argued. The argument escalated, resulting in Rollins fatally shooting Morris.

At trial, Rollins testified that he shot Morris in self-defense after Morris drew a gun from under his seat. The prosecution called three witnesses: Morris's wife, who had been in the car with him; and Morris's friends August Fueselier and Curtis Austin, who worked at a nearby auto repair shop. Morris's wife testified that Morris did not own a gun and did not reach under his seat. Fueselier and Austin contradicted the testimony of Morris's wife in one key respect: they both testified that Morris reached under his seat before the shooting. However, both said that they did not know if Morris tried to grab a gun, and Austin explained that he was on the other side of the car from Morris and did not have a clear view.

According to the police report, Joseph Brion was the sole passenger in Rollins's car at the time of the shooting. Brion apparently told the police that he saw Morris reach under his seat prior to the shooting and stand up with something in his hand, but there is no indication that Brion testified at Rollins's

---

[1] The facts of this case are not set forth in the record or in any published or unpublished opinions regarding Rollins's conviction. Accordingly, the facts contained herein derive from Rollins's allegations and his submitted exhibits, including the transcript of an evidentiary hearing that was held before the state district court.

No. 09-30837

trial. According to Rollins, his counsel called no witnesses on his behalf and informed him that it would have been a waste of time to search for other witnesses because the police had not been able to locate any. Indeed, the police report for the investigation stated that "[a]ttempts were also made to locate any other witnesses in the neighborhood to no avail."

The jury found Rollins guilty of second-degree murder, and he was sentenced to life in prison. On direct appeal, the Louisiana Supreme Court affirmed Rollins's conviction and sentence. *See State v. Rollins*, 302 So. 2d 288, 290 (La. 1974). Rollins filed at least two separate habeas petitions. One was denied on the merits, and the other was dismissed; both rulings were affirmed on appeal. *See Rollins v. Cain*, 184 F.3d 819 (5th Cir. 1999) (affirming the district court's dismissal of Rollins's habeas petition as "abusive and successive under Rule 9(b) of the Rules Governing Section 2254 Proceedings"); *Rollins v. Maggio*, 711 F.2d 592, 593–94 (5th Cir. 1983) (affirming the district court's denial of Rollins's first habeas petition).

In 2000, Rollins's wife was traveling by van to visit Rollins in prison when she began talking with another passenger, Jane Marie Lewis.[2] After hearing the details of Rollins's conviction, Lewis recalled witnessing the shooting from the porch of her house, which was located directly in front of the crime scene. Although the police report stated that the investigating officers had not found a firearm or any other weapon on Morris or in his vehicle, Lewis told Rollins's wife that she saw Morris draw a gun from under his seat just before being shot. According to Lewis, the female passenger in Morris's vehicle—presumably, his wife—hid Morris's gun before police arrived.

After learning of Lewis's account, Rollins obtained a copy of the prosecutor's files, which contained a crime-scene photograph that showed a handful of

---

[2] Apparently, a local organization provided informal group transportation for members of the community who wanted to visit inmates at the prison.

bystanders. This photograph had not been entered into evidence at trial and presumably had never been seen by Rollins's counsel. Apparently, Lewis and her sons are visible in the photograph, standing on the porch of their home just beyond the police tape that cordoned off the crime scene.

In 2002, Lewis and her son, Percy Gray, signed affidavits describing their recollections of the shooting. Both said that Morris retrieved a gun from under his car seat just before Rollins shot him. Gray also stated that a woman took Morris's gun from his car after the shooting.

Rollins filed a petition for post-conviction relief in state court. The state district court conducted an evidentiary hearing, where Lewis was the only witness.[3] She repeated her affidavit testimony that Morris drew a gun from under his car seat before Rollins drew his gun. She also testified that the woman in the car with Morris hid Morris's gun after the shooting.

After the testimony, Rollins's attorney argued that during the original trial, two of the three prosecution witnesses—Fueselier and Austin—testified that Morris reached under his seat for something just before Rollins drew his gun; that these witnesses directly contradicted the testimony of Morris's wife, who claimed that Morris had not reached under his seat; and that now, thirty years later, Lewis's testimony confirmed Rollins's self-defense claim. The attorney for the State did not dispute any of Rollins's factual assertions. Instead, she argued that the petition was untimely because Rollins could have previously discovered the evidence through the exercise of due diligence.

Although it is not clear from the record, it appears that the state district court denied Rollins's petition as time-barred.[4] The Louisiana Supreme Court

---

[3] It is unclear why Gray was not also a witness at the hearing.

[4] Under AEDPA, we ordinarily defer to the factual findings of the state court; however, it does not seem that the state district court made any factual findings. *See Moody v. Quarterman*, 476 F.3d 260, 267–68 (5th Cir. 2007) ("As to AEDPA's requirement that this

No. 09-30837

denied Rollins's subsequent application for supervisory and remedial writs. *State ex rel. Rollins v. Rollins*, 864 So. 2d 128 (La. 2004).

Rollins has now filed a *pro se* motion in this Court seeking authorization to file a successive § 2254 petition in federal district court. Basing his claim on Lewis and Gray's testimony, Rollins contends that he can now show that (1) the state courts deprived him of his equal protection rights by erroneously applying Louisiana's limitations bar to his state post-conviction petition; (2) he was denied his due process rights because no jury has been permitted to hear this newly-discovered evidence; and (3) his trial counsel rendered ineffective assistance by failing to conduct a proper investigation, which would have revealed that Lewis and Gray were eyewitnesses who could have supported his claim for self-defense.

## II. ANALYSIS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires that, before a "second or successive application . . . [can be] filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application." 28 U.S.C. § 2244(b)(3)(A). As specified in § 2244(b)(3)(C), we may grant authorization only if "the application makes a *prima facie* showing that the applicant satisfies the requirements" of § 2244(b). As Rollins's claims were not presented in either of his prior petitions for federal habeas relief, he must make a *prima facie* showing that

> [1] the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

> [2] the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable

---

court defer to the state trial court's findings of fact, this directive is not applicable as to this state trial court because it failed to make any findings of fact relative to the heart of Moody's claim.").

5

factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244(b)(2)(B).

A *prima facie* showing is "simply a sufficient showing of *possible* merit to warrant a fuller exploration by the district court." *In re Morris*, 328 F.3d at 740 (quotation omitted) (emphasis added). "If it is reasonably likely that the motion and supporting documents indicate that the application meets the 'stringent' requirements for the filing of a successive petition, then we must grant authorization to file the petition." *In re Henderson*, 462 F.3d 413, 415 (5th Cir. 2006) (citation and internal quotation marks omitted).

Rollins's newly-discovered evidence consists of Lewis and Gray's testimony regarding the shooting. Our first inquiry under § 2244(b)(2)(B) is whether Rollins has established a *prima facie* case that he could not have previously discovered this evidence through the exercise of due diligence. We find that he has. Under the unique facts of this case, even the police, with presumably more investigatory resources and training than Rollins and his counsel, could not locate these two witnesses despite the fact that they lived directly in front of the crime scene and were in a crime-scene photograph that the police had in their possession. The police report explicitly said that police had tried to locate additional eyewitnesses "to no avail." There is no indication that the police did not exercise due diligence in their investigation. And absent evidence to the contrary, we will not assume that police investigators did not exercise due diligence. Accordingly, Rollins has met the first prong of § 2244(b)(2)(B).

Turning to the second prong of § 2244(b)(2)(B), there is at least possible merit to the argument that Rollins has shown by clear and convincing evidence that, in light of Lewis and Gray's testimony, no reasonable juror could have found him guilty beyond a reasonable doubt. This case hinged on self-defense—whether Morris drew a gun immediately before the shooting. Under

Louisiana law, "[a] homicide is justifiable if committed by one in defense of himself when he reasonably believes that he is in imminent danger of being killed or receiving great bodily harm and that the homicide is necessary to save himself from that danger." *State v. Batiste*, 947 So. 2d 810, 815 (La. Ct. App. 2006) (quotation omitted). The prosecution had the burden to prove, beyond a reasonable doubt, that Rollins did not act in self-defense—in other words, that Morris did not draw a gun. *State v. Lynch*, 436 So. 2d 567, 569 (La. 1983).

The prosecution's case at trial was hardly overwhelming. The prosecution offered three witnesses. Only one, Morris's wife, unequivocally testified that Morris did not draw a gun from under his seat. The other prosecution witnesses contradicted Morris's wife: they testified that Morris had reached under his car seat for something.

Lewis and Gray's testimony significantly weakens the prosecution's case and strengthens Rollins's self-defense claim. As explained above, there was already reason to question the veracity of Morris's wife. Now there is more—Lewis and Gray testified that Morris's wife concealed Morris's gun after the shooting. In addition, Lewis and Gray unequivocally testified that Rollins shot Morris only after Morris had grabbed a gun. In light of this new evidence, we hold that Rollins has established a *prima facie* case under the second prong of § 2244(b)(2)(B).

## III. CONCLUSION

For the foregoing reasons, we GRANT Rollins's motion for authorization to file a successive habeas petition.