# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 24, 2020

Lyle W. Cayce
Clerk

No. 20-10712

John Ray Cheek,

*Petitioner—Appellant*,

*versus*

Warden of Federal Medical Center; Federal Medical Center; Michael Carvajal; Federal Bureau of Prisons Director,

*Respondents—Appellees*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:20-CV-677

Before Jolly, Southwick, and Wilson, *Circuit Judges*.

Per Curiam:*

A federal prisoner brought a *habeas* application pursuant to 28 U.S.C. § 2241. Among other things, the application sought release from a Federal Medical Center to home confinement due to the global pandemic created by

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-10712

COVID-19.    The district court dismissed for lack of subject-matter jurisdiction because it held Section 2241 to be an improper vehicle for the claims.  Relying on other grounds, we AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

John Ray Cheek is confined in the Federal Medical Center in Fort Worth, Texas, as a result of his 2011 convictions for bank robbery and using, carrying, and brandishing a firearm during or in relation to a crime of violence.  He and other inmates filed a putative class action via a Section 2241 *habeas* application in the United States District Court for the Northern District of Texas.  In that filing, the inmates alleged various constitutional violations and principally sought relief in the form of release to home confinement.

Before the Government responded, the district court dismissed the case for lack of subject-matter jurisdiction.  The court held that Section 2241 was not the proper basis for such claims.  The court characterized the prisoners' allegations as "challenging unconstitutional conditions of confinement."  Those, the court held, were not properly brought in a traditional *habeas corpus* action.  The court then dismissed the case for lack of subject-matter jurisdiction.  Cheek appeals.

## DISCUSSION

Cheek's goal is to be released to home confinement.  We must decide whether Cheek has brought the right form of suit to get such relief and, if he has, whether he is entitled to be sent home.

2

## I.     Section 2241

Section 2241 applications are used to challenge the *length* of a prisoner's sentence. *See, e.g.*, *Davis v. Fechtel*, 150 F.3d 486, 487–88, 490 (5th Cir. 1998). If the prisoner wishes to challenge the *conditions* of his confinement, that claim is brought under 42 U.S.C. § 1983. *See id.* at 490. It is the "blurry" distinction between the two that we try to clarify, at least a little, today. *See Carson v. Johnson*, 112 F.3d 818, 820 (5th Cir. 1997).

When a federal prisoner contests being confined at all and, in addition, the conditions of the confinement, "a court [can] split the complaint and deal with that portion which is properly before it." *Shaw v. Briscoe*, 526 F.2d 675, 676 (5th Cir. 1976) (discussing *Preiser v. Rodriguez*, 411 U.S. 475, 499 & n.14 (1973)). The district court summarily dismissed Cheek's suit in its entirety without determining if at least some claims were properly brought using Section 2241.

Cheek is seeking a change in his physical confinement when he requests that he be moved to home confinement due to the risk of contracting COVID-19 while in the Federal Medical Center. "[R]elease from physical confinement in prison constitutes release from custody for *habeas* purposes, even though the state retains a level of control over the releasee." *Coleman v. Dretke*, 409 F.3d 665, 669 (5th Cir. 2005). If Cheek's effort to be released from a medical center to home confinement is "challenging the fact and duration of his confinement," as Cheek argues it is, then suit under Section 2241 is proper.

Two circuits have addressed the validity of a Section 2241 claim in the context of the COVID-19 pandemic. *Wilson v. Williams*, 961 F.3d 829 (6th Cir. 2020); *Medina v. Williams*, 823 F. App'x 674 (10th Cir. 2020). The Sixth Circuit held that Section 2241 was the proper vehicle when prisoners sought "release from custody to limit their exposure to the COVID-19 virus."

No. 20-10712

*Wilson*, 961 F.3d at 832–33. This was so because the prisoners argued "the constitutional violations occurring at [the prison] as a result of the pandemic can be remedied only by release." *Id.* at 838. Cheek makes a similar argument. The Tenth Circuit panel did not rule on the merits, but it did suggest "the claim could be construed as also contending that in light of the pandemic [the prisoner] should be released from custody because there are *no conditions of confinement* that could adequately prevent an Eighth Amendment violation." *Medina*, 823 F. App'x at 676. We agree.

Cheek's request for release to home confinement in the context of a global pandemic was properly brought as an application for a writ of *habeas corpus* under Section 2241 because a favorable ruling from the district court would accelerate his release.[1]

## II.    Relief requested

Though a *habeas* application is appropriate, Cheek encounters the barrier that the precise remedy he seeks is outside the scope of a federal court's authority.

---

[1] This holding, though, does not alter the availability and requirements of other statutory provisions under which prisoners may seek relief due to COVID-19. *See, e.g.*, *Valentine v. Collier*, 978 F.3d 154 (5th Cir. 2020) (holding that the Prison Litigation Reform Act's exhaustion requirements were not excused by the pandemic); *United States v. Franco*, 973 F.3d 465 (5th Cir. 2020) (holding that the exigent circumstances of the COVID-19 pandemic do not excuse the statutory requirements for requesting compassionate relief — the prisoner must first seek relief from the BOP before seeking court intervention). *But see Valentine v. Collier*, 956 F.3d 797, 807 (5th Cir. 2020) (Higginson, J., concurring) ("[O]ur reasoning on PLRA's exhaustion requirement does not foreclose federal prisoners from seeking relief under the First Step Act's provisions for compassionate release. Though that statute contains its own administrative exhaustion requirement, several courts have concluded that this requirement is not absolute and that it can be waived by the government or by the court, therefore justifying an exception in the unique circumstances of the COVID-19 pandemic." (internal citation omitted)).

No. 20-10712

The relevant statute states: "The Bureau of Prisons shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph." 18 U.S.C. § 3624(c)(2). COVID-19 concerns expanded the Bureau of Prisons' ("BOP") power through legislation and directives from the Attorney General, but the pandemic did not create judicial authority to grant home confinement. Specifically, in March 2020, the Attorney General asserted that "for some eligible inmates, home confinement might be more effective in protecting their health"; the Attorney General provided a non-exhaustive list of discretionary factors for the BOP to consider in making this determination.[2] Soon after, the Attorney General issued a second memorandum that instructed the BOP to "immediately review all inmates who have COVID-19 risk factors, as established by the CDC" and allowed the BOP to release prisoners, even in the absence of appropriate at-home monitoring.[3] As just noted, though, these directives were given to the BOP.

Cheek proposes a route for us through use of a recent Congressional enactment that established a COVID-19-related procedure. *See* Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (2020). The provision on which Cheek bases his argument states:

> During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau, the *Director of the Bureau* may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under

---

[2] Memorandum from the Attorney General on Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic to Director of Bureau of Prisons (Mar. 26, 2020).

[3] Memorandum from the Attorney General on Increasing Use of Home Confinement at Institutions Most Affected by COVID-19 to Director of Bureau of Prisons (Apr. 3, 2020).

> the first sentence of section 3624(c)(2) of title 18, United States
> Code, as the Director determines appropriate.

*Id.* (emphasis added). This provision does not grant a court the necessary power to order Cheek to be placed in home confinement. It is the BOP and the Attorney General who have the discretion to consider the appropriateness of home release based on certain statutory and discretionary factors. No inmate has a constitutional right to be housed in a particular place or any constitutional right to early release. *See Wottlin v. Fleming*, 136 F.3d 1032, 1037 (5th Cir. 1998); *Rublee v. Fleming*, 160 F.3d 213, 217 (5th Cir. 1998). It is not for a court to step in and mandate home confinement for prisoners, regardless of an international pandemic.

To be clear, though, vested authority in the BOP might not wholly eliminate a court's role in such decisions. *See Melot v. Bergami*, 970 F.3d 596, 599–600 (5th Cir. 2020). Under the Elderly Offender Home Detention Program, this court clarified that discretion "does not mean that the Attorney General's or BOP's determinations regarding participation in the Program are entirely insulated from judicial review." *Id.* at 600. A challenge to the BOP's or Attorney General's interpretation of the statute would make judicial review appropriate. *Id.*

Here, though, the record does not indicate the extent to which the BOP actually considered Cheek for home-confinement release. Without a denial from the BOP, there is nothing for us to review. Cheek presents no indication that the BOP denied him or others, appropriately or otherwise, a request for home confinement. Instead, Cheek seems to challenge the BOP's silence, without any specific adverse decision. Cheek states that BOP officials and staff are ignoring inmates or refusing to provide them a remedial process. He asserts: "Inmates have no access to administrative remedies." These declarations cannot bypass the general rule that we must have *some* decision to review under *Melot*. Thus, even *Melot* does not give us authority

here to review an adverse decision because no such decision is present in the record.

We may affirm on any ground before the district court, even if it was not the basis for the district court's decision. *Janvey v. Alguire*, 847 F.3d 231, 243 n.10 (5th Cir. 2017). Here, the district court classified Cheek's claims as challenges to the "conditions of confinement" and dismissed the case for lack of subject-matter jurisdiction. We find that Cheek's claims do sound in *habeas* but that he has not presented an administrative decision that this court can review.[4] Because release to home confinement is a discretionary decision left to the Attorney General and the BOP, and there is no denial of relief for the court to review, neither the district court nor this court can review the BOP's failure to release Cheek to home confinement. *See United States v. Sneed*, 63 F.3d 381, 389 n.6 (5th Cir. 1995).

AFFIRMED.

---

[4] The Tenth Circuit has affirmed the dismissal of a *habeas* petition under Rule 12(b)(6) after finding that the district court improperly dismissed based on a lack of subject-matter jurisdiction. *Aguilera v. Kirkpatrick*, 241 F.3d 1286, 1290 (10th Cir. 2001). That court said, "[A]lthough the district court had subject matter jurisdiction over the petitioners' claims under 28 U.S.C. § 2241, it should have dismissed for failure to state a claim under Rule 12(b)(6)." *Id.* Further, when "remand would only require a new Rule 12(b)(6) label for the same Rule 12(b)(1) conclusion," remand is unnecessary. *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 254 (2010). We find that analysis applicable here.